## HIDALGO COUNTY WATER IMPROVE-MENT DIST. NO. 4 v. WILTSEY et al.* (No. 7306.)

(Court of Civil Appeals of Texas. San Antonio. March 11, 1925. Rehearing Denied April 8, 1925.)

Waters and water courses ⨺231—Water improvement district held authorized to levy and collect taxes for maintenance.

Board of directors of a county water improvement district *held* authorized, under Complete Tex. St. 1920, arts. 5107—1 to 5107—122, as amended by Acts 1921, c. 94 (Vernon's Ann. Civ. St. Supp. 1922, art. 5107—1 et seq.), to levy and collect a tax to pay expenses of maintenance of district and debts incurred in its organization, prior to holding of any election to determine whether or not bonds should be issued to provide funds for construction of irrigation system, and subsequent holding of election, resulting in favor of issuance of such bonds, did not render tax levy invalid or prevent district from collecting them.

Appeal from District Court, Hidalgo County; L. J. Polk, Judge.

Action by Hidalgo County Water Improvement District No. 4 against C. E. Wiltsey and others. From the judgment of dismissal, plaintiff appeals. Reversed and remanded.

Don A. Bliss, of San Antonio, for appellant.

Kennerly, Williams, Lee & Hill, of Houston, William S. West, of Brownsville, George A. Hill, Jr., and Irl F. Kennerly, both of Houston, D. F. Strickland, of Mission, and Glasscock & Leslie, of McAllen, for appellees.

COBBS, J. Appellant, the Hidalgo county water improvement district No. 4, a municipal corporation, incorporated under the provisions of chapter 2 of title 73, R. S., sued appellees to recover certain alleged taxes due appellant.

The first amended original petition of said water improvement district alleges the due incorporation of the district; that the board of directors of said corporation on July 25, 1922, under the authority conferred upon it by law, duly and legally levied a tax upon all the taxable property situated in said district of 50¢ on the $100 valuation, for the purpose of raising a fund to pay the expenses of maintenance of said district for the current year 1922; and, that, among the property upon which said taxes were levied, were the four said tracts of land assessed as the property of the said Wiltsey, the total amount of said taxes, etc., being the sum of $133.75, stating a valuation of each tract as made by the assessor and collector of taxes of said district. Said petition further alleged that said taxes became due on the 1st day of November, 1922, and should have been paid by a date not later than the 31st day of January, 1923; that the board of directors of said district caused to be prepared by the tax collector of said district a list of all the lands in said district upon which the said tax remained unpaid on the 31st day of January, 1923, which list is known as the delinquent tax roll, which was delivered to the secretary of the board of directors of said district, to be kept by him safely, as required by law; that, upon the completion of said delinquent tax record, the directors of said board caused the same to be published in the McAllen Monitor, a newspaper published in the said county of Hidalgo in which said district is situated, for three consecutive weeks, stating the dates of each publication; that said taxes had never been paid; that, by reason thereof, interest on the amount of said taxes on said property accrued from the 1st day of August, 1923, at the rate of 6 per centum per annum, and a penalty of 10 per centum on the entire amount of said taxes accrued and became due and payable unto the said district, the total amount of said penalty being $13.37, and that an advertising fee of 25¢ on each of said tracts of land accrued and became due and payable unto said district.

Said petition further alleged that, at the time said levy of said taxes was made, no election had been held in said district to determine whether or not bonds should be issued for the purpose of constructing or acquiring an irrigation system, and that no order for such an election had been made at said time.

The said petition further alleged that a considerable amount of expenses had been incurred in the maintenance of said district, stating the amount and the purposes for which said expenses had been incurred, prior to the time any order was made by the board of directors of said district for an election to be held by the qualified voters residing in said district, to determine whether or not bonds should be issued for the purpose of constructing or acquiring an irrigation system.

Said petition further alleged that on May 4, 1923, an order was made by said board of directors for the holding of an election to determine whether such bonds of the district should be issued, and that on the 25th day of May, 1923, an election was held for said purpose, which election resulted in favor of the issuance of the bonds, but that none of said bonds could be sold until about December, 1923.

Appellee presented, among other pleas, a general demurrer which was sustained by the court and, appellant refusing to amend, the cause was dismissed.

To give a better conception of appellant's

cause of action, as disclosed by the petition itself that was dismissed, we have copied it as set out in appellant's brief.

The district was duly organized, and the board of directors, on July 25, 1922, levied a tax upon all the taxable property in the district of 50¢ on the $100 valuation for the purpose of raising a fund to pay the expense of maintenance of the district for the current year 1922. Among the property assessed was that of appellee Wiltsey, aggregating $133.75, which it was alleged became due November 1, 1922. When this assessment was levied, no election had been held to determine whether bonds should be issued for the purpose of constructing an irrigation system. On May 4, 1923, the board of directors ordered an election to be held to determine whether such bonds should be issued, and on the 25th day of May, 1923, the election was held in favor of the issuance of the bonds, but that none of such bonds should be sold until about December, 1923.

The statutes authorizing the creation of such districts and authorizing the creation of debts and providing for taxes to be assessed, levied, and collected for the payment of expenses and for the issuance of bonds, are as follows: (1) Act of 1905 (Gen. Laws Reg. Sess. 29th Leg. [1905] pp. 235–259), brought forward into the Revised Statutes of 1911 as articles 5012–5107, and repealed and superseded by the act of 1913. (2) Act of 1913 (Gen. Laws Reg. Sess. 33d Leg. [1913] pp. 380–408). (3) Amending act of 1917 (Gen. Laws Reg. Sess. 35th Leg. [1917] pp. 172–210). (4) Amending act of 1919 (Gen. Laws 2d C. Sess. 36th Leg. [1919] pp. 65–76). (5) Complete Texas Statutes 1920, arts. 5107—1 to 5107—122. (6) Amending act of 1921 (Gen. Laws Reg. Sess. 37th Leg. [1921] pp. 183–185; Vernon's Ann. Civ. St. Supp. 1922, art. 5107—1 et seq.).

The statute here involved is the act of 1913, as amended in 1917, 1919, and 1921. and as it existed in 1922 when the tax in controversy was levied. Specific reference is made above to the original act of 1905, and to the act of 1913 with its various amendments. For convenience refer to Complete Texas Statutes 1920, arts. 5107—1 to 5107—122, and the amendment of 1921.

No question is raised as to the validity of the law or of the organization of the water improvement district and appellant submits two questions of law as the sole issue, which are as follows:

"First. Did the board of directors have the power and authority under the law to levy a tax to pay the expenses of the maintenance of the district prior to the holding of any election in said district to determine whether or not bonds of the district should be issued for the purpose of providing funds wherewith to construct or to acquire an irrigation system?

"Second. Did the holding of an election in said district resulting in favor of the issu-ance of said bonds have the effect of rendering said tax levy invalid?"

The law, among other things, after the district is created, provides very much in detail a complete system for the assessment, levy, and collection of taxes upon property within the district, for its proportionate share of any "taxation or bonded indebtedness that may have been created against said district and subject to such reasonable charge against such lands for the purpose of defraying its part of the expenses of maintenance, operation, or other necessary expenditures previously made, as may be determined by the board of directors." Vernon's Sayles' Ann. Civ. St. 1914, art. 5107—20. It is also provided that—

"Immediately upon the qualification of the assessor and collector * * * he shall enter upon the discharge of his duties, and shall at once proceed to make an assessment of all the taxable property, both real, personal and mixed, in his said district, and such assessment shall be made annually thereafter." Article 5107—25.

It provides for a board of equalization of assessments; appraisal of property not listed by owners; notice to owners of action of board of equalization; appearance of owner; hearing of objections; approval of lists; reconvening of board to approve rolls; compensation of members of board of equalization, etc.; duplicate tax rolls; collection of taxes; date of assessment; time for completion; annual meeting of board of equalization, etc.; when taxes become due; lien for taxes, sale, etc.; delinquent tax roll; suit for taxes; disposition of proceeds; fees of attorneys and officers; penalty, interest, etc., for nonpayment of taxes. Vernon's Ann. Civ. St. Supp. 1922, art. 5107—122j, provides:

"Any water improvement district organized under authority of section 59 of article 16 of the Constitution, and chapter 25, General Laws, Fourth Called Session, Thirty-Fifth Legislature, * * * as well as any water improvement district which may have been created prior to the adoption of such constitutional amendment, and which shall have availed itself, or may hereafter avail itself, of the benefits of section 59 or article 16 of the Constitution, may, at the time of its creation, or at any time thereafter before such district shall have issued bonds, submit to the qualified electors of such district the question whether the taxes to be levied therein, or any part thereof, shall be levied, assessed, and collected upon an 'equitable' basis in proportion to benefits to be conferred by the organization, operation, and maintenance of such district and the work and improvements to be created thereby, or whether such taxation or any portion thereof shall be levied upon an ad valorem basis. Such question shall be submitted to the qualified voters of such district at any time and in any manner that the governing body of such water improvement district may select, and the ballots to be used shall have printed thereon, in substance, the following: 'For the levy of taxes upon a

benefit basis instead of an ad valorem basis,' and 'against the levy of taxes on a benefit basis instead of on an ad valorem basis.' "

In creating the district, the law provided for the levy and collection of taxes in very complete terms. Of course, it required the expenditure of money to put in operation the machinery necessary to carry out its purposes. Money was necessary and that purpose was secured by the vote of the qualified voters of the district authorizing the collection of taxes. The tax was authorized to be assessed and levied against all property in the district. It was a necessary condition precedent to the organization of the water district to levy these taxes. It also provided a complete scheme for collecting the taxes to administer the affairs of the district. It was a full, complete, and necessary grant of power to the district, and, if not so expressly granted, must be implied from the many terms in the law itself concerning the duties of the officers in respect to the entire act. How else could the district, a municipal government, be created and administered. The power was conferred by the act to create the district and direct its officers to assess and levy taxes, implied all necessary power to levy and collect the tax to discharge the debts necessarily incurred in its organization. 19 Ruling Case Law, pp. 947, 948, 28 Cyc. pp. 1672, 1673; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960; United States v. City of New Orleans, 8 Otto (98 U. S.) 381, 25 L. Ed. 225.

The contention made by appellees is that the distinction between construction and a maintenance fund created by section 68 and preceding sections of the act and the maintenance and operating fund created by section 71 of the act, directing payment of moneys raised through the medium of bonds for particular purposes, is that the former had for its sole purpose providing funds for the construction or purchase by the district of an irrigation system, and for the payment of organization and maintenance expenses prior to the time when such irrigation system shall have been put in operation by the district. Construction and maintenance fund consists of moneys received by the district from the sale of bonds of the district, "or as hereinafter provided":

"*Maintenance and Operating Fund.*—There shall also be created a fund to be known as 'maintenance and operating fund' and such fund shall consist of all moneys collected by assessment or otherwise for the maintenance and operation of the properties owned or acquired by such district, or for temporary annual rental due to the United States, and out of this fund shall be paid all expenses of operation of every kind except the expenses of assess-

ing and collecting taxes for the interest and sinking fund; and for the payment of any balance due on construction or for extensions and improvements, not otherwise provided for, such debts to be paid upon warrants executed as otherwise provided herein." Acts 1913, p. 380, § 71; Acts 1917, c. 87, § 70 (Vernon's Ann. Civ. St. Supp. 1922, art. 5107—71).

This must be construed as a clear indication of the grant of power to the district to make the assessment and levy of the taxes sued for, and, for that reason, the same are valid and legal. While section 68, at the time of the levy of the taxes, required, in case the district issued and sold bonds, the expenses of organization of the district should be paid out of the proceeds of the bonds, this would not in itself invalidate a tax that had been legally levied theretofore by the board of directors, who under the act were authorized to make the levy and have it submitted to a vote of the qualified voters to be authorized by them prior to any election, to determine whether bonds should be issued for the purpose of providing a fund to construct a new system or to purchase one already in existence.

No order was made for holding the bond election until nearly a year had passed and over four months after the tax had become delinquent.

The statute does not ipso facto require bonds to be voted upon for the purpose of paying the expenses of organization. That is left to the discretion of the qualified voters to determine.

The statute provides for forfeiture of the district in case it fails to begin work within two years after its organization. Certainly it is not a prerequisite to the existence of a water district that it issue its bonds to pay the expenses. Why could not that all be covered by taxation? This the statute provides for. It had to organize and begin operations within two years. The subsequent issue of bonds was not a prerequisite to its organization. The people might refuse to issue any bonds for any purpose whatsoever. Would that destroy the district? Certainly not, if it could be carried on by taxation or otherwise.

The statute only undertakes to determine how the money raised by bond elections shall be paid and applied. That must be confined to a question of expenditure, it does not affect the organization or defeat the raising of money by taxation, and its application.

All the provisions of the act must be construed together and made to harmonize as a whole, if possible. The district had the right to levy these taxes and, if it did, it has the right to collect them.

The judgment is reversed, and the cause is remanded for another trial.